# SUSSMAN & ASSOCIATES
## ~Attorneys at Law~

1 Railroad Avenue, Suite 3, P.O. Box 1005, Goshen, New York 10924

**Michael H. Sussman**

(845) 294-3991 [Tel]
(845) 294-1623 [Fax]
info@sussman.law

**Of Counsel**
Jonathan R. Goldman
Christopher D. Watkins
Mary Jo Whateley

February 6, 2025

Hon. Phillip M. Halpern
United States District Court – SDNY
Charles L. Brieant Federal Courthouse
300 Quarropas Street, Room 530
White Plains, NY 10601

Re: ***Bowman v. Dutchess County CC, 23 cv 08482 (PMH)***

Dear Judge Halpern,

We represent plaintiff and I respond to Mr. Bernstein's letter seeking leave to file a motion for summary judgment. We have submitted an extensive response to defendant's Rule 56.1 Statement and highlight facts which preclude grant of summary judgment.

Mr. Bowman was hired as Assistant Vice President for Human Resources and then asked to perform three distinct jobs which were divided between three employees after he was terminated. He advised the President that it was impossible to successfully do all three jobs but was simply told to do his best, which is exactly what he did. A study commissioned during plaintiff's employment noted the understaffed nature of the HR Department and the need for increased staffing.

The college President raised plaintiff's salary and renewed his contract after events he now adduces as the basis for adverse action. This would lead a reasonable juror to question the non-pretextual basis of later claims that plaintiff ill—performed his jobs. Dr. Jordan also piled on additional work after plaintiff's employment started which is also patently inconsistent with claims made about his lack of competency.

I respond next to each point made by Mr. Bernstein:

1. The same actor inference is not a rule of law, inexorably followed. It can be argued but is not, in itself, dispositive in any case. The president was

1

substantially influenced in his decision-making by the now departed Mr. Rathbun who was plaintiff's immediate supervisor and who is Caucasian.

2. Plaintiff did have an employment contract which provides for "for cause" termination. Defendant did not invoke that provision because it knew that it had no basis to terminate the plaintiff and had unfairly over-burdened him with three jobs. There is no right to not renew a contract for discriminatory reasons. *Lawrence v. Northwell Health Inc.*, 19 cv 07448 (6/28/22 S.D.N.Y.). The issue is whether racial discrimination influenced the decision not to renew.

3. Plaintiff was placed on a performance improvement plan for reasons which no one ever explained to him. Rathbun did this shortly after becoming his supervisor and never told plaintiff its rationale. Plaintiff fulfilled all of the requirements of that plan and there is not a scintilla of evidence that Rathbun advised him of any deficiency in his performance either before or after the plan was imposed. A reasonable jury could reject Jordan's vague and baseless claims that "there were functions of the HR Department that were not being performed such as labor relations and employee relations including taken concerns of the employees and addressing them." [See Bernstein letter pp. 2-3]. The President could provide no specifics because this was made up out of whole cloth and following *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 149-51 (2000), this court cannot credit any evidence a jury could reject. "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge." *Liberty Lobby,* supra, at 255. Thus, although the court should review the record as a whole, it must disregard all evidence favorable to the moving party that the jury is not required to believe. See Wright & Miller 299. That is, the court should give credence to the evidence favoring the nonmovant as well as that "evidence supporting the moving party that is uncontradicted and unimpeached, at least to the extent that that evidence comes from disinterested witnesses." *Id.,* at 300.

4. Plaintiff explained why the "dashboard" needed additional work, as he was awaiting information from third parties who were delaying the project's completion. This was no fault of his and attributing blame to him is further evidence of pretext and bias. "In appropriate circumstances, the trier of fact can reasonably infer from the falsity of the explanation that the employer is dissembling to cover up a discriminatory purpose. Such an inference is consistent with the general principle of evidence law that the factfinder is entitled to consider a party's dishonesty about a material fact as "affirmative evidence of guilt." *Wright v. West, 505* U. S. 277, 296 (1992); see

2

also *Wilson* v. *United States, 162* U. S. 613, 620-621 (1896); 2 J. Wigmore, Evidence § 278(2), p. 133 (J. Chadbourn rev. 1979). Moreover, once the employer's justification has been eliminated, discrimination may well be the most likely alternative explanation, especially since the employer is in the best position to put forth the actual reason for its decision. *Cf. Furnco Constr. Corp.* v. *Waters,* 438 U. S. 567, 577 (1978) ("[W]hen all legitimate reasons for rejecting an applicant have been eliminated as possible reasons for the employer's actions, it is more likely than not the employer, who we generally assume acts with *some* reason, based his decision on an impermissible consideration"). Thus, a plaintiff's prima facie case, combined with sufficient evidence to find that the employer's asserted justification is false, may permit the trier of fact to conclude that the employer unlawfully discriminated." *Reeves, supra.*

5. Dr. Jordan claims he "was aware of a student and faculty complaints about how plaintiff handled his Title IX responsibilities but had no facts which could predicate a conclusion that plaintiff did anything wrong in handling either case.

6. Dr. Jordan claims that plaintiff should have spoken up more at meeting; plaintiff explains that at the referenced meetings, the President spoke seriatim with each Vice President about his/her area and that no one "spoke up" unless spoken to. Again, a jury could find this reason entirely fallacious and unworthy of belief.

7. Finally, Dr. Jordan believed that there were "complaints received from DCC employees about plaintiff being slow to respond and not supplying accurate data." Again, upon inquiry, Jordan had no specifics or anything else to support this assertion. He could not identify any complainant or the basis of their complaints nor attest to the validity of any such complaint.

In short, Bowman was fired after the President extended his first contract and gave him a raise. He was fired after a Caucasian came to be his supervisor, almost immediately placed him on an unexplained improvement plan which he dutifully complied with by providing weekly reports of the activities in which he engaged. Bowman received no adverse feedback on his performance and handled the responsibilities of three distinct job titles which were filled with three others, including two persons who are not African Americans, after his termination.

The bases for adverse action forth in Mr. Bernstein's letter are all fabrications which lack any verification, like the identity of anyone who complained about plaintiff, the substance of the complaints and whether any had any colorable basis. In this context, a reasonable jury could reject

these articulated bases for the adverse action and determine that race discrimination influenced the decision, particularly since, in explaining his termination, Rathbun told plaintiff that he was not a good cultural fit for the college.

Respectfully submitted,

Michael H. Sussman

cc: Counsel of record by ECF

4